<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOYCE DIAZ, | |
| Plaintiff, | Civil Action No. 14-2780 |
| v. | OPINION & ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

**I.     INTRODUCTION**

Joyce Diaz ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying her Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). (D.E. No. 1). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). This motion has been decided upon the written submissions of the parties pursuant to Federal Rule Civil Procedure 78(b). For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed.

**II.    FACTUAL & PROCEDURAL BACKGROUND**

On September 17, 2007, Plaintiff filed a claim for SSI based on her back pain and depression. (*See* D.E. No. 7 ("Tr."[1]) 83). Her application was first denied on April 11, 2008, (Tr. 83–84), and then again on October 22, 2008. (Tr. 85–86). Thereafter, a request was made for a

---

[1] "Tr." refers to the administrative record, which uses continuous pagination.

hearing before an ALJ. (Tr. 121). An ALJ issued a decision on January 14, 2010 denying disability benefits, (Tr. 90–97), but an Appeals Council remanded the matter for a second ALJ hearing. (Tr. 102–03). The remand asked the ALJ to (1) clarify the Plaintiff's mental impairment; (2) further consider Plaintiff's residual functional capacity ("RFC") and provide specific references to the record in support of the assessment; and (3) to obtain a vocational expert's ("VE") testimony "to clarify the effect of the assessed limitations on the claimant's occupational base." (Tr. 103).

On June 8, 2011, in accordance with the remand order, ALJ Dennis O'Leary issued a decision denying Plaintiff disability benefits. (Tr. 12–19). In the decision, the ALJ found Plaintiff to have a back impairment and depression but did not find them to meet or equal the requirements of the "Listing of Impairments" to be considered disabled. (Tr. 14–15).

In regard to Plaintiff's RFC, the ALJ found that Plaintiff "could perform sedentary work . . . involving only one and two step simple work, no continual and repetitive right fingering manipulation." (Tr. 15). In making the RFC determination, the ALJ stated that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. 16).

In addition, the ALJ considered a VE's testimony who stated that there are jobs in the economy for someone with Plaintiff's ailments—even when taking into account Plaintiff's hand problem, which has no supporting medical evidence. (Tr. 17). Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the SSA, through the date of the ALJ's decision. (Tr. 18).

The Appeals Council denied a request for review on February 28, 2014, stating that the ALJ's decision "is the final decision of the Commissioner of Social Security." (Tr. 1).

On May 1, 2014, Plaintiff filed a timely complaint in this Court appealing the Commissioner's decision denying disability benefits.  (D.E. No. 1).  Defendant filed an answer on September 10, 2014.  (D.E. No. 6).  Plaintiff filed a brief pursuant to Local Civil Rule 9.1(e) on November 5, 2014, arguing that the ALJ ignored the VE's testimony, made an inconsistent RFC determination, and impermissibly relied on the Medical-Vocational Guidelines (the "grids").  (*See* D.E. No. 10, Brief in Support of Plaintiff Joyce Diaz ("Pl. Mov. Br.")).  Defendant filed a brief in opposition on January 20, 2015.  (D.E. No. 13, Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")).  Plaintiff then filed a reply brief on January 28, 2015.  (D.E. No. 15, Plaintiff's Reply Brief ("Pl. Reply Br.")).  The case is now ready for determination.

## III.   LEGAL STANDARD

### A. *Standard for Awarding Benefits*

Pursuant to the SSA, to receive DIB, a plaintiff must show that she is disabled by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Thus, the plaintiff's physical or mental impairments must be "of such severity that she is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).  Impairments that affect a plaintiff's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations.  20 C.F.R. § 404.1569a; *see also Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered non-exertional.  *Sykes,* 228 F.3d at 263.  Decisions regarding disability are made individually based on evidence

produced at a hearing. *Id.* at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has defined a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3).

The SSA proscribes a five-step sequential evaluation to determine whether a plaintiff is disabled. 20 C.F.R. § 416.920. The evaluation will continue through each step unless it can be determined at any point that the plaintiff is, or is not disabled. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof for the first four steps of the analysis. *Poulous v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). The burden shifts to the Commissioner for the fifth step. *Id.* (citing *Sykes*, 228 F.3d at 263); *see also Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (noting that "the burden of production shifts to the Commissioner" at the fifth step) (internal quotation marks omitted).

At step one, the plaintiff's work activity is assessed, and she must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). A plaintiff is engaging in substantial gainful activity if she is doing significant physical or mental activities usually done for pay or profit. *Id.* at § 416.972. If the plaintiff is engaged in substantial gainful activity, she will be found not disabled and the analysis will stop, regardless of the plaintiff's medical condition, age, education, or work experience. *Id.* at § 416.920(b). If the plaintiff is not engaging in substantial gainful activity, the analysis proceeds to the second step. At step two, the plaintiff must show that she has a medically determinable "severe" impairment or a combination of impairments that is "severe." *Id.* at § 416.920(a)(4)(ii). An impairment is severe when it significantly limits a plaintiff's physical or mental ability to perform basic work activities. *Id.* at § 416.920(c). An impairment is not severe when medical evidence shows only a slight abnormality or minimal effect

on an individual's ability to work.  *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010) (citation omitted).  If a plaintiff does not have a medically determinable severe impairment, she is not disabled.  20 C.F.R. §§ 416.920(a)(4)(ii), (c).  If the plaintiff has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the plaintiff's impairment matches or is equivalent to an impairment listed in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairments are the same or equivalent to those listed, the plaintiff is per se disabled.  20 C.F.R. § 416.920(d); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).  At this point, the ALJ must set forth the reasons for his findings.  *Burnett,* 220 F.3d at 119.  The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence.  *Id.*  Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review."  *Id.*

When the plaintiff does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four.  At step four, the ALJ must determine whether the plaintiff's RFC enables her to perform her past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  This step involves three sub-steps: (1) the ALJ must make specific findings of facts as to the plaintiff's RFC; (2) the ALJ must make findings regarding the physical and mental demands of the plaintiff's past relevant work; and (3) the ALJ must compare the RFC to the past relevant work to determine whether the plaintiff has the capability to perform the past relevant work.  *Burnett,* 220 F.3d at 120.  The SSA classifies RFC and past work by physical exertion requirements ranging from "sedentary" to "very heavy" work.  *See id.*; 20 C.F.R. § 404.1567.  If the plaintiff can perform her past work, the ALJ

will find that she is not disabled. 20 C.F.R. § 416.920(f). If the plaintiff lacks the RFC to perform any work she has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on the plaintiff's RFC and other vocational factors, there is a significant amount of other work in the national economy that the plaintiff can perform. 20 C.F.R. § 416.920(a)(4)(v). During this final step, the burden lies with the government to show that the plaintiff is not disabled by demonstrating that there is other substantial, gainful work that the plaintiff could perform, given her age, education, work experience, and RFC. *See Rutherford v. Barnhart,* 399 F.3d 546, 551 (3d Cir. 2005); *Sykes,* 228 F.3d at 263. If the Commissioner cannot show that there are other jobs for the plaintiff in the national economy, then the plaintiff is disabled. 20 C.F.R. § 416.920(g)(1).

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

**IV.    DISCUSSION**

On appeal, Plaintiff argues that the case should be remanded because (1) the ALJ failed to follow the Appeals Council's remand order by "ignor[ing] the entirety of the VE's testimony"; and (2) the ALJ simultaneously found a limited RFC as well as a full RFC for sedentary work, and further, found Plaintiff not to have a disability by impermissibly relying on the grids. (Pl. Mov. Br. at 12–14). Thus, Plaintiff argues that the Commissioner did not satisfy the fifth step burden requiring a showing that Plaintiff can work.  (*Id.* at 14).  Plaintiff asks the Court to consider reversing the Commissioner's final decision and order the payment of benefits or, in the alternative, to remand this case to the Commissioner for a new hearing and a new decision. (*Id.* at 10, 22–23).  In response, Defendant argues that the ALJ followed the remand order and the other issues raised by Plaintiff constitute nothing more than harmless errors.  (Def. Opp. Br. at 2–4).  For the reasons stated below, the Court rejects Plaintiff's contentions.

    *A.  The ALJ Followed the Remand Order*

Plaintiff argues that the ALJ ignored the VE's testimony and therefore did not follow the Appeals Council's remand order.  For the reasons below, the Court disagrees.

An ALJ's hypothetical questions to a VE need only accurately reflect the impairments and limitations of a plaintiff as they are credibly contained in the record.  *Rutherford*, 399 F.3d at 554 ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant.  Instead . . . the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*.") (emphasis in original) (footnote and citation omitted).  Thus, an ALJ does not have to accept as true restrictions laid out in a hypothetical to a VE if the ALJ does not find them to be supported by evidence in the record.  *See Jones*, 364 F.3d at 506; *Kalenkoski v. Colvin*, No. 14-00592, 2014 WL 5093129, at *10 (M.D. Pa. Oct. 10, 2014).

Here, the Appeals Council's remand order required the ALJ to obtain VE testimony "to clarify the effect of the assessed limitations on the Plaintiff's occupational base." (Tr. 103). The ALJ in fact heard VE testimony during Plaintiff's hearing. (Tr. 49–55). At the hearing, in response to questions posed, the VE testified that someone with Plaintiff's ailments would be able to perform certain jobs that exist in the economy. (Tr. 49–52). In his decision, the ALJ referenced the VE's testimony. (Tr. 17). Indeed, the ALJ explicitly noted that the VE testified that Plaintiff could "perform jobs and alternate sit/stand every half hour," (*id.*), which appears to have been inferred from questions asked by the ALJ and Plaintiff's attorney. (Tr. 52, 53).

On the other hand, some hypothetical questions posed by Plaintiff's attorney to the VE were not taken into account in the ALJ's decision. For example, the VE testified that there would not be jobs for someone who could not do "fine fingering frequently," which was in response to the attorney's question. (Tr. 55). However, the ALJ did not find Plaintiff credible as to all her alleged difficulties. (*See, e.g.*, Tr. 17 (noting Plaintiff's assertion as to her ability to help her children in school while she is lying down lacks credibility in light of the evidence)). Additionally, an ALJ does not have to take into account non-credible difficulties because "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Because the ALJ did not find all of Plaintiff's limitations—including Plaintiff's hand problem—to be supported by the record, (*see* Tr. 17), such limitations laid out in hypotheticals to the VE did not have to be taken into account by the ALJ. *Jones*, 364 F.3d at 506 (noting an ALJ did not err by failing to take into account hypothetical questions not supported by evidence in the record). The Court therefore finds that the ALJ's decision, including the ALJ's incorporation of the VE's testimony, was in accordance with the Appeals Council's remand order and supported by substantial evidence.

*B. The ALJ's Use of the Grids and Inconsistent RFC Determination are Harmless Errors*

Plaintiff argues that the ALJ impermissibly relied on the grids[2] to find Plaintiff not disabled at step five. (Pl. Mov. Br. at 11-12). Plaintiff further contends that the ALJ erred by finding inconsistent RFCs at two different parts of the administrative opinion. (*Id.* at 12-13). Defendant responds that, to the extent that the ALJ erred on either account, the error did not affect the ALJ's ultimate decision and was thus harmless. (Def. Op. Br. at 3-4). Here, the Court agrees with Defendant that these errors were harmless.

An ALJ's error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003). If an ALJ makes an error in the proceedings "the burden of showing that [the] error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The grids are used to determine whether certain types of jobs will be available to a claimant who exhibits only exertional impairments. *See Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Where an ALJ determines that the claimant exhibits non-exertional impairments, "full consideration must be given to all of the relevant facts in the case." *Id.* (internal quotation marks omitted). In such circumstances, the ALJ is instead required to consult a specially trained VE. *Sykes*, 228 F.3d at 273.

At Finding No. 10, the ALJ stated that "[b]ased on a residual functional capacity for the full range of sedentary work, considering claimant's age, education and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.27." (Tr. 18). Because the ALJ previously found Plaintiff to have both exertional and non-exertional impairments, the ALJ's reliance on the grids in Finding No. 10 was in error. *See Burnam*, 682 F.2d at 458 (finding that

---

[2] The grids are listed in 20 CFR Part 404, Subpart P, Appendix 2.

ALJ erred in relying on the grids to determine whether jobs existed for claimant who had both exertional and non-exertional impairments).

However, at Finding No. 5 of the ALJ's opinion, the ALJ also explicitly considered the VE's testimony that

> at a sedentary level, [Plaintiff was capable of] perform[ing] one and two step processes, no continual and repetitive fine fingering manipulation in right hand (due to allegation of hand problem even though no medical evidence to corroborate this). He testified that there are jobs. [The VE] also testified that the claimant could also perform jobs and alternate sit/stand every half hour. Job examples are document preparer, order clerk and scale operator.

(Tr. 17). The ALJ subsequently appears to have adopted the VE's testimony, concluding at the end of Finding No. 5 that Plaintiff is not disabled. (Tr. 17). This analysis meets the ALJ's requirement to consider a VE's testimony before making a disability determination under these circumstances. *See Sykes*, 228 F.3d at 273.

Because the ALJ stated that Plaintiff was not disabled after considering the VE testimony at Finding No. 5—as well as after his erroneous grid analysis at Finding No. 10—the Court has no reason to believe that the ALJ's reference to the grids at finding No. 10 affected the ALJ's ultimate finding of non-disability. *See Perkins*, 79 F. App'x at 515. Thus, the Court finds that the ALJ's application of the grids at Finding No. 10 constitutes harmless error. *See id.*

As for the RFC findings, the ALJ's statement that Plaintiff had an RFC for a "full range of sedentary work" at Finding No. 10, (Tr. 18), appears to be inconsistent with the ALJ's statement in Finding No. 5 that Plaintiff had an RFC "to perform sedentary work . . . [but] only one and two step simple work, no continual and repetitive right fine fingering manipulation." (Tr. 15). However, the ALJ conducted his actual RFC analysis at Finding No. 5, and supports his RFC finding there with a detailed analysis. (Tr. 15-17). While the statement at Finding No. 10 contradicts the earlier RFC finding, the ALJ's discussion in this section does not appear to have

10

had any effect on the ALJ's actual RFC or step 5 conclusions arrived at in Finding No. 5. This is particularly true in light of the above-stated conclusion that the grid analysis at Finding No. 10 also constituted harmless error. For these reasons, the Court finds that the ALJ's inconsistent characterization of his RFC analysis at Finding No. 10 constitutes harmless error. *See Perkins*, 79 F. App'x at 515; *Jones*, 364 F.3d at 505 (noting that an ALJ does not need to use a particular format in conducting the analysis; there merely needs to be enough development of the record to allow meaningful review).[3]

## V.     CONCLUSION

Accordingly, it is on this 30th day of September 2015,

ORDERED that Plaintiff's appeal is DENIED and the ALJ's decision is AFFIRMED; and it is further

ORDERED that the Clerk of the Court shall close the case.

**SO ORDERED.**

s/*Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] Based on the above analysis, it appears to the Court that the ALJ combined his actual step four and step five analysis into one detailed two-and-a-half page discussion within the Finding No. 5 section of the opinion. (Tr. 15-17). The Finding No. 10 section, on the other hand, consists of a boilerplate recitation of Social Security guidelines and procedures relevant to a step five determination, followed by a single conclusory statement that "a finding of 'not disabled' is directed by Medical-Vocational Rule 201.27." (Tr. 18). While the ALJ may have included the Finding No. 10 section in an effort to standardize the structure of the opinion, the ALJ's choice to discuss his actual step five analysis in the Finding No. 5 section appears to have rendered the later section extraneous. This fact further supports the Court's decision to analyze the sufficiency of the ALJ's opinion without regard to the conclusions contained in Finding No. 10. *See Jones*, 364 F.3d at 505.